**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROY GERALD SMITH, | No. CIV S-10-1737-KJM-CMK-P |
| Petitioner, | |
| vs. | <u>FINDINGS AND RECOMMENDATIONS</u> |
| M.D. McDONALD, | |
| Respondent. | |
| _____/ | |

Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the court is petitioner's petition for a writ of habeas corpus (Doc. 1), respondent's answer (Doc. 14), and petitioner's traverse (Doc. 22).[1]  Also before the court are petitioner's motion for discovery (Doc. 19) and motion to stay these proceedings (Doc. 20).

/ / /

/ / /

---

[1] Petitioner has filed a motion for an extension of time to file his traverse (Doc. 21).  The traverse was thereafter filed.  The motion for an extension of time should be granted, nunc pro tunc, and the traverse deemed timely.

1

# I. BACKGROUND

A.   **Facts**[2]

The state court recited the following facts, and petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

> Defendant Roy Gerald Smith was charged with murder with the special circumstance of lying in wait. . ., grand theft auto. . . ., and having four prior serious felony convictions. . . . The prosecution announced its intent to seek the death penalty.
> The victim, 46-year-old Mary Starkey, had advertised a boat for sale. Apparently claiming that he was interested in buying the boat, defendant went to Starkey's residence on June 15, 2005, where he was seen by Starkey's mother, Olivia Morino. When Starkey came out of the house with paperwork for the boat, defendant said that he needed to retrieve some money from a safe deposit box. He drove off in a brown minivan, and Starkey followed in her Saturn. When Starkey did not return home, Morino contacted the police to file a missing person report.
> The day after Starkey was reported missing, members of her extended family went looking for her. A cousin saw Starkey's Saturn in the parking lot of a local winery and reported this to the police. Officers examined the Saturn and found a woman's purse containing a driver's license and credit cards in the name of Mary Starkey, as well as $327 in cash.
> Surveillance tapes showed the Saturn arriving in the parking lot between 10:30 and 11:00 p.m. on June 15, 2005. A man wearing a numbered sports jersey, later identified as defendant, got out of the car and went into the winery through an entrance requiring an employee identification card. Larry Perez, who worked at the winery, saw defendant arrive in the car and asked him about it. Defendant said it belonged to a friend.
> At the change of shift the next morning, defendant left the winery in the van of a fellow employee, Jorge Estrada. After having told Estrada that the car belonged to a drug dealer, defendant said: "You know what, Jorge? I think I did something bad." Defendant later said he had killed the dealer in a drug dispute. He used the word "asphyxiate" when he demonstrated how he reached around the dealer from behind and covered the mouth to prevent the dealer from breathing. Estrada saw scratches and abrasions on defendant's hands. Defendant explained the dealer struggled and kicked really hard. He said his wife saw the body in the bathtub and became angry with him. He asked Estrada for suggestions as to where he should dump the body. Estrada suggested a dumpster. Defendant looked

---

[2]   Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. See id. These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. Petitioner may also be referred to as "defendant."

at Estrada and asked, "you ain't going to tell on me, would you?"

A warrant search of defendant's residence yielded a sports jersey with the same number as the one seen in the surveillance video. Defendant's wife, Lolita Rodriguez, told an officer that she knew nothing about the homicide, but that she saw a woman's shoulder in the bathroom shower on June 15, 2005. In a later interview, Rodriguez said that when she arrived home from work on June 15, defendant emerged from the bathroom wearing jeans and no shirt; he appeared to be wet. Their children asked to use the bathroom, but defendant at first said no. Then he went into the bathroom, came back out, and said that the children could use it. After he did so, Rodriguez followed defendant into the bathroom and saw a Caucasian woman's shoulder in the tub. She screamed, gathered the children, and took them to a local restaurant where they stayed until it closed. When she returned home, defendant was there but the body was gone. Defendant left for work at 10:00 p.m. After he was arrested, defendant said to Rodriguez: "I don't know if I'm going to be able to get out of this, so I want you to go back to your family."

Mary Starkey's body had not yet been discovered when defendant was charged with her death.

As part of a negotiated plea agreement, defendant furnished information leading to recovery of the victim's body. The prosecutor amended the information to allege first degree murder and agreed not to seek the death penalty. Defendant pled guilty to the charge and admitted the lying in wait special circumstance. The charge of grand theft and the four prior serious felony conviction enhancements were dismissed. In accordance with the plea agreement, defendant was sentenced to state prison for life without the possibility of parole, was awarded 756 days' custody credit, and was ordered to pay a $200 restitution fine plus 10 percent surcharge. . . and a $20 court security fee. . . .

**B.    Procedural History**

Petitioner was sentenced on July 16, 2007, and the California Court of Appeal affirmed on February 19, 2009. Petitioner did not seek direct review by the California Supreme Court. Petition did, however, file a state habeas petition in the trial court, which was denied in a reasoned decision on July 2, 2009. Petitioner then filed a habeas petition in the California Court of Appeal, which was denied on September 3, 2009. Petitioner filed a petition for writ of habeas corpus in the California Supreme Court on November 30, 2009. That petition was denied on May 12, 2010.

/ / /

/ / /

/ / /

## II. STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998). The AEDPA does not, however, apply in all circumstances. When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo. See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner). When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist." Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both

4

standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams, 529 U.S. at 412) . "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en banc). Supreme Court precedent is not clearly established law, and therefore federal habeas relief is unavailable, unless it "squarely addresses" an issue. See Moses v. Payne, 555 F.3d 742, 753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)). For federal law to be clearly established, the Supreme Court must provide a "categorical answer" to the question before the state court. See id.; see also Carey, 549 U.S. at 76-77 (holding that a state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice created by state conduct at trial because the Court had never applied the test to spectators' conduct). Circuit court precedent may not be used to fill open questions in the Supreme Court's holdings. See Carey, 549 U.S. at 74.

   In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error. See Benn v. Lambert, 283 F.3d 1040,

5

1052 n.6 (9th Cir. 2002). If so, the next question is whether such error was structural, in which case federal habeas relief is warranted. See id. If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless. See id.

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case. See Wiggins v. Smith, 539 U.S. 510, 520 (2003). While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. See Williams, 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law. See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003). An "unreasonable application of" controlling law cannot necessarily be found even where the federal habeas court concludes that the state court decision is clearly erroneous. See Lockyer, 538 U.S. at 75-76. This is because "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Id. at 75. As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless. See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000). Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA. See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982. The federal habeas court assumes that state court applied the correct law and analyzes whether

the state court's summary denial was based on an objectively unreasonable application of that law.  See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

### III.  DISCUSSION

Petitioner raises three grounds for relief based on ineffective assistance of counsel.  First, he argues that his trial counsel was ineffective for coercing petitioner into accepting a plea bargain.  Second, he contends that his trial counsel was ineffective for failing to disclose meritorious defenses to him before taking a plea bargain.  Third, petitioner claims that his trial counsel was ineffective for failing to raise the meritorious defense that a third party was actually responsible for the crime.  Respondent contends that the second and third claims are unexhausted and that none of the claims has merit.[3]

The Sixth Amendment guarantees the effective assistance of counsel.  The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984).  First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  See id. at 688.  To this end, petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  See id. at 690.  The federal court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance.  See id.  In making this determination, however, there is a strong presumption "that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

/ / /

---

[3] An unexhausted claim may nevertheless be denied on the merits.  See 28 U.S.C. § 2254(b)(2).

Second, a petitioner must affirmatively prove prejudice. See Strickland, 466 U.S. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.; see also Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

### A.     First Claim

Regarding petitioner's first claim that the plea agreement was coerced by his trial counsel, the state court addressed the claim as follows:

> It appearing that a Petition for Writ of Habeas Corpus was filed herein on June 23, 2009, and good cause appearing therefor, IT IS HEREBY ORDERED that the Petition for Writ of Habeas Corpus is DENIED for the reasons indicated.
> REASON: Petitioner contends that he was "under duress and coerced by both trial attorneys" to entering a plea of guilty to the charge of murder . . . with the special circumstance of laying in wait. . . .
> Petitioner fails to inform this Court that Petitioner entered into a written agreement with the District Attorney's Office whereby he agreed to assist law enforcement officers in locating the victim's body (including "a detailed description of where the body was disposed, how it was disposed, and on what date it was disposed") and if a substantial portion of the victim's body was found, Petitioner would be allowed to enter a plea of guilty to the murder charge and admit the special circumstance allegation in exchange for the District Attorney's Office agreeing that it would no longer seek a death sentence. This Agreement was signed by the Petitioner on July 11, 2007.
> Petitioner alleges that his counsel informed him that he would be appearing at a Motion for Change of Venue hearing, instead of a change of plea hearing, and that all he needed to state was "yes, yes, yes" to any question posed by the Court. However, the Court's transcript for the Change of Plea Statement hearing which occurred on July 16, 2007, clearly reflects that the Court specifically asked the Petitioner if he understood

///

> what was going on at the hearing and he stated, "Yes, Your Honor, I do." . . . . The following excerpt is from the Change of Plea hearing:
>
>> "The Court:   So Mr. Smith, as to the allegation in Count 1, murder, 187, in the first degree, June 15, 2005, as to Mary Theresa Morino Starkey, how do you plead?
>>
>> The defendant:   Guilty." (citation to transcript omitted).
>
> It is clear from this exchange that the Petitioner did not merely answer "yes, yes, yes" to all questions posed to him by the Court and that he clearly understood what type of hearing he was attending and that he was pleading guilty to a charge of murder in the first degree.
>
> In determining whether a defendant, with effective assistance, would have accepted the offer, pertinent factors to be considered include: whether counsel actually and accurately communicated the offer to the defendant; the advice, if any, given by counsel; the disparity between the terms of the proposed plea bargain and the probable consequences of proceeding to trial, as viewed at the time of the offer; and whether the defendant indicated he or she was amenable to negotiating a plea bargain. In this context, a defendant's self-serving statement – after trial, conviction, and sentence – that with competent advice he or she would [not] have accepted a proffered plea bargain, is insufficient in and of itself to sustain the defendant's burden of proof as to prejudice, and must be corroborated independently by objective evidence. A contrary holding would lead to an unchecked flow of easily fabricated claims. (citation omitted).
>
> As stated above, when defendants claim they received ineffective assistance of counsel at the plea bargain stage, they must show that had they received effective representation, they would not have accepted the offer. (citations omitted). . . .
>
> The Attorney General rightly reminds us, however, that petitioner's assertion he would not have pled guilty if given competent advice "must be corroborated independently by objective evidence." (citations omitted). . . .
>
> Petitioner has failed to meet his burden of proof that he was prejudiced by counsel's decision and advice to enter a plea of guilty instead of proceeding to trial and risking a possible death sentence. Petitioner has therefore failed to set forth a prima facie case of ineffective assistance of counsel so far as these claims are concerned. (citation omitted). Conclusory allegations are insufficient to constitute a prima facie showing for habeas corpus relief. (citations omitted). If no prima facie claim for relief is stated, . . . the court will summarily deny the petition. (citation omitted).
>
> The Petition is hereby DENIED.

A plea bargain is enforceable if the plea represents a "voluntary and intelligent choice among the alternative courses of action open to the defendant." Parke v. Raley, 506 U.S. 20, 29 (1992). The defendant must have sufficient awareness of the relevant circumstances and likely consequences of the waiver of certain constitutional rights. See Brady v. United States, 397

1  U.S. 742, 947-48 & n.4 (1970). A defendant's representations on the record, as well as any
2  findings made by the trial court, present a "formidable barrier" in a collateral challenge.
3  Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). "Solemn declarations in open court carry a
4  strong presumption of verity." Id. at 74.

5        In this case, the court agrees with the state court that petitioner's representations on
6  the record at the change of plea hearing preclude habeas relief. Specifically, contrary to
7  petitioner's allegation that all he said was "yes, yes, yes" per counsel's instructions, the hearing
8  transcript reveals that he said much more. The trial court specifically asked petitioner what plea
9  he wished to enter to the charge of first degree murder and petitioner stated "Guilty." Petitioner
10 also admitted to the facts of the crime and that the crime was committed by means of lying in
11 wait. And, when asked whether petitioner wanted life in prison instead of a possible death
12 sentence, he said "Yes, your Honor." Finally, petitioner signed a written plea agreement in which
13 he stated that he had discussed the facts of the case and consequences of a guilty plea with
14 counsel.

15       Because the sate court identified the appropriate legal standards, the court reviews
16 under the deferential "unreasonable application of" standard and finds that the state court's
17 rejection of petitioner's claim that trial counsel coerced the guilty plea was not based on an
18 unreasonable application of federal law. As outlined above, petitioner's statements in open court
19 are presumed correct. The state court was not objectively unreasonable in relying on this
20 presumption to conclude that plaintiff had not met his burden of showing that the plea was
21 involuntary due to coercion, or that he was prejudiced in any way by counsel's advice with respect
22 to the plea agreement. In fact, given the overwhelming evidence of petitioner's guilt and the
23 existence of special circumstances which would have justified the death penalty, the court cannot
24 see any reasonable probability that the outcome would have been any better had petitioner opted
25 for a trial. Rather, it would have been likely that petitioner would have faced the death penalty
26 had he not entered into the plea bargain.

B. **Second and Third Claims**

In his second claim, petitioner asserts:

Petitioner submits that defense counsel(s) were in possession of, or were aware of the following information which would have exonerated him of first or even second degree murder.

1) Knew that the prosecution had no direct, physical, nor circumstantial evidence that positively identified petitioner as to the killing of Ms. Mary Starkey, that would positively lead to a conviction for first or second degree murder.

2) Knew through discovery that the day that Ms. Starkey had disappeared that to wit: a Spiros Kanakis (white male) was seen at the Starkey residence; a van identified by license plate was seen at the Starkey residence and that such van did not belong to either victim nor her husband, and that a person fitting the description of Jorge Estrada (male Hispanic) was also seen at the Starkey residence the day that Ms. Starkey came up missing.

Such was clearly relevant in terms of a meritorious third-party defense as petitioner informed both of his defense counsel that it was Jorge Estrada who had committed the murder leading to petitioner's culpability as an accessory "after the fact."

With convincing evidence that petitioner did not match any description as set forth by eyewitnesses (neighbors) and reports and testimony as to Jorge Estrada's propensity and culpability to have murdered Ms. Starkey, such issue alone required an investigation before any negotiated plea took place.

3) Knew that besides petitioner's steadfast denials that he did not kill Ms. Starkey, that they could prove and produce an alibi defense for petitioner based on his "Washington Mutual Card" and purchases not only on the day Ms. Starkey came up missing, but specific times on that day conclusively showing petitioner was nowhere near the Starkey residence. (It should be noted, petitioner purchased a salad and beer according to recorded transactions at Finley's Restaurant at 12:30 p.m. and made another withdrawal at the corner store for $10.00 on the disappearance day in question. Defense counsel(s) were in possession of this information and did nothing to confirm it, let alone present such evidence to the prosecution in terms of an alibi defense or actual innocence claim for petitioner).

///

11

        4)        Knew that petitioner's alibi and potential alibi defense was meritorious based on the knowledge of that day Ms. Starkey disappeared as disclosed in discovery.

        Ironically, the day that Ms. Starkey disappeared, she was in the process of signing her divorce papers, another fact turned over to the defense counsel(s) in discovery.

Petitioner adds that defense counsel knew "that Jorge Estrada had threatened petitioner and his family if petitioner refused to confess to the murder of Ms. Mary Starkey." In his third claim, petitioner argues that defense counsel rendered ineffective assistance by "failing to investigate and present evidence that Jorge Estrada was responsible for the murder of Mary Starkey."

Respondent argues that neither claim is federally cognizable. As respondent correctly observes, claims of failure to investigate must be accompanied by a showing of what facts an investigation would have uncovered and how such facts would have changed the outcome. See Hamilton v. Vasquez, 17 F.3d 1149, 1157 (9th Cir. 1994). The court agrees with respondent that:

> Here, Petitioner does not identify a witness by name, nor does he demonstrate that any witness was willing and available to testify on his behalf. Furthermore, Petitioner does not support his claim with reasonably available evidence, such as the record from the trial court, witness affidavits, attorney affidavits, police reports, or even a receipt or credit card statement substantiating his assertion that "recorded transactions" existed which would have supported an alibi defense.

Quite simply, petitioner's second and third claims are conclusory and unsupported by any factual showing.

Finally, even assuming that the second and third claims are cognizable, the court cannot find any reasonably possibility of a different outcome to life in prison without the possibility of parole had counsel conducted the investigations petitioner asserts should have been done. The purported factual underpinning of petitioner's second and third claims is that someone else, and not he, killed Ms. Starkey. Such underpinning, however, is completely eroded by the state court's findings of fact which must be presumed correct because petitioner has presented no

///

1  evidence (let alone clear and convincing evidence) otherwise.  See 28 U.S.C. § 2254(e)(1).[4]

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that petitioner's petition for a writ of habeas corpus (Doc. 1) be denied and that all pending motions be denied as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  June 24, 2011

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE

---

[4]  The facts found by the state court establishing that petitioner killed Ms. Starkey include: eyewitness identification by the victim's mother, surveillance videotape, clothing worn by the man in the videotape found at petitioner's residence, evidence that petitioner confessed to Estrada, evidence that petitioner made incriminating statements to his wife on the day of the murder after she saw portions of a body in their bathtub, and evidence that petitioner possessed the victim's car and purse after her disappearance.